UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>APPROXIMATELY 22 MILLION IN )<br>BRITISH POUNDS REPRESENTING )<br>THE VALUE OF 4,000,000 SHARES )<br>OF COMMON STOCK IN CARACAL )<br>ENERGY INC., FORMERLY )<br>GRIFFITHS ENERGY )<br>INTERNATIONAL, ON DEPOSIT AT )<br>THE ROYAL BANK OF SCOTLAND )<br>IN LONDON, UNITED KINGDOM IN )<br>ACCOUNT NUMBER 10008114, AT )<br>SORT CODE 16-08-82, AND ALL )<br>ASSETS TRACEABLE THERETO, )<br>)<br>Defendant. | Case No. 15-cv-1018 |

**MEMORANDUM OPINION**
September 27, 2024 [Dkt. #67]

Before the Court is the United States' motion to dismiss the claim of Nouracham Bechir Niam ("Niam") under the fugitive disentitlement statute, 28 U.S.C. § 2466. The Court **GRANTS** the motion, and Niam's claim is thus dismissed.

**I.    BACKGROUND**

This *in rem* civil action seeks forfeiture of approximately 22 million British pounds, an amount that represents the value of 4 million founders' shares in Griffiths Energy International Inc. ("Griffiths Energy"). Compl. [Dkt. #1] ¶ 1. These shares are traceable to, and involved in, a criminal conspiracy in which claimant Niam took part.

1

Compl. ¶¶ 1–4. In 2009, Niam lived in the United States with her husband, Chadian ambassador Mahamoud Adam Bechir ("Bechir"). Compl. ¶¶ 13–16. Griffiths Energy gave 4 million founders' shares to Bechir and Youssouf Hamid Takane ("Takane") for their influence in helping it obtain development rights. Compl. ¶¶ 24–26. To conceal their involvement, Bechir and Takane arranged for these shares to be issued to proxies, with 1.6 million shares being issued to Niam, 800,000 to Takane's wife, and 1.6 million to their associate, Adoum Hassan ("Hassan"). Compl. ¶¶ 26–27. In 2014, Niam and Bechir transferred Hassan's 1.6 million shares to Niam. Compl. ¶¶ 4, 57.[1] This transfer seems to have always been the plan, because in 2009 Bechir signed an accredited investor certificate and money order in Hassan's name for Hassan's shares. Compl. ¶¶ 28–29.

The United States filed its complaint on June 30, 2015 [Dkt. #1]. Niam filed her claim on August 14, 2015 [Dkt. #9], asserting ownership of the assets constituting the proceeds from the sale of the 3.2 million Griffiths Energy shares issued in the names of Niam (the First Defendant Asset) and Hassan (the Second Defendant Asset.).[2] In January 2016, the Court stayed this case pending the Government's ongoing criminal investigation of the schemes alleged in the forfeiture complaint. The Government informed Niam's counsel of that related criminal investigation. *See* Pl.'s Mot. to Dismiss Claim by N.B. Niam Under the Fugitive Disentitlement Doctrine, 28 U.S.C. § 2466 ("Pl.'s Mot.") Ex. 1, Aff. of Special Agent Yelena Rudenko ("Rudenko Aff.") [Dkt. #67-1] ¶ 7. In February 2019, a multi-count sealed Indictment (the "Indictment") charged

---

[1] That year, Griffiths Energy was acquired in cash at 5.50 British pounds per share, valuing Niam's shares—issued at .001 Canadian dollars per share—at 17.6 million British pounds. Compl. ¶¶ 27, 59.
[2] Niam has also filed a motion to dismiss [Dkt. #27], but that motion is being held in abeyance pending resolution of the United States' motion to dismiss Niam's claim. *See* Min. Order (Mar. 6, 2024).

Bechir, Takane, and Niam with counts of conspiracy, money laundering, aiding and abetting, and forfeiture. *See* Pl.'s Mot. Ex. 2 ("Indictment") [Dkt. #67-2]. Because the Indictment's forfeiture count includes all proceeds traceable to the crimes alleged therein, *see* Indictment ¶¶ 63–67, it includes the defendants *in rem* in this civil forfeiture matter.

The Indictment was unsealed in May 2021. Rudenko Aff. ¶ 10. Before that, Tyab pleaded guilty. Pl.'s Mot. 4. Bechir has not appeared; he is currently the Chadian ambassador to Kazakhstan, after serving in Russia and South Africa before that. Rudenko Aff. ¶ 12. Niam has also not appeared or returned to the United States since the unsealing of the Indictment, despite travelling elsewhere with Bechir and having family in the United States. Rudenko Aff. ¶¶ 12–26. Between May and July 2021, counsel communicated regarding Niam's appearance in the criminal case. Pl.'s Mot. 5. Niam wanted a commitment from the Government that it would not seek her detention if she appeared, which the Government, not surprisingly, would not give. Rudenko Aff. ¶ 10.

In September 2023, the Government filed an unopposed motion to lift the stay in this case [Dkt. #66]. Niam's counsel again expressed that she was not willing to appear in the criminal case unless the Government made a prior commitment not to seek her detention, which the Government still would not make. Rudenko Aff. ¶ 11. In October 2023, the stay was lifted and the Government filed the instant motion to dismiss, arguing that the fugitive disentitlement doctrine should bar Niam's claim. Pl.'s Mot. [Dkt. #67]. On January 5, 2024, Niam filed her response, contending that she "is not refusing to surrender to the Court" but was unable to return to the United States because she could not get the visa necessary to enter. Claimant N. Niam's Opp'n to Gov't's Mot. to

Dismiss ("Niam's Opp'n") [Dkt. #69] at 7. Niam expressed that "[s]he would like to appear in her criminal case to assert her innocence." Niam's Opp'n 21. Therefore, the Government filed an unopposed motion to stay briefing so it could facilitate Niam's travel to the United States and voluntary surrender in the criminal case [Dkt. #70].

On February 26, the Government filed a status report that it would consider Niam's request for pretrial release if she would comply with GPS monitoring and turn over her passports. United States' Status Rpt. [Dkt. #71] at 2. However, Niam had failed to provide any of the information the Government requested and needed to facilitate a parole visa and pretrial release. *Id.* at 1–3. On March 5, in a second status report, the Government shared that Niam still had neither surrendered nor provided "*any* of the information necessary for the government to file for a parolee visa on her behalf." United States' Second Status Rpt. [Dkt. #72] at 1–2 (emphasis added). Accordingly, the stay was lifted, and the Government filed its reply brief on March 25. United States' Reply to Claimant N. Niam's Opp'n ("Pl.'s Reply") [Dkt. #73]. On April 19, Niam filed a sur-reply. Claimant N. Niam's Sur-Reply to Gov't's Reply ("Niam's Sur-Reply") [Dkt. #77].

## II.   LEGAL STANDARD & PROCEDURAL POSTURE

The Government has moved to dismiss Niam's claim under the fugitive disentitlement statute, 28 U.S.C. § 2466. The parties dispute whether the Court may treat this as a motion to dismiss or as a motion for summary judgment. For the reasons explained *infra*, it would not be appropriate to apply the summary judgment standard here.

A.     **The Fugitive Disentitlement Doctrine**

Fugitive disentitlement was "a well-established common law doctrine . . . first developed as a way for courts to dismiss appeals in criminal cases by defendants who had escaped custody after filing the appeal and were evading the jurisdiction of the court." *United States v. $6,976,934.65* ("*Soulbury II*"), 554 F.3d 123, 127 (D.C. Cir. 2009). Some courts applied the doctrine in civil forfeiture actions to "dismiss a claim based on the fugitive's evasion of a related, but separate, criminal proceeding." *Id.* In *Degen v. United States*, 517 U.S. 820 (1996), the Supreme Court determined that use of fugitive disentitlement in civil matters was not permissible "[a]s a court-made rule." *Soulbury II*, 554 F.3d at 127. In response to *Degen*, Congress enacted the fugitive disentitlement statute as part of the Civil Asset Forfeiture Reform Act ("CAFRA"), *see* Pub. L. No. 106-185, 114 Stat. 202 (2001), which states, in relevant part:

> (a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person--
>> (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution--
>>> (A) purposely leaves the jurisdiction of the United States;
>>> (B) declines to enter or reenter the United States to submit to its jurisdiction; or
>>> (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and
>> (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

28 U.S.C. § 2466. With this statute, "Congress specifically conferred statutory authority on federal courts to order disentitlement in civil forfeiture cases." *Collazos v. United*

5

*States*, 368 F.3d 190, 198 (2d Cir. 2004). "Further, Congress clearly anticipated § 2466 would apply to individuals with no reason to come to the United States other than to defend against criminal charges." *United States v. Batato*, 833 F.3d 413, 430 (4th Cir. 2016) ("A criminal indictment gives such a person a reason to make the journey, and the statute is aimed at those who resist nevertheless."); 28 U.S.C. § 2466(a)(1)(A)–(C).

### B.     Adjudicating Motions Under 28 U.S.C. § 2466

Section 2466 does not contain its own standard. "Essentially every court to have considered a disentitlement case—both under the common law and post-CAFRA—has treated the motion as something like a motion to dismiss, has looked to matters outside the pleadings, and has, where appropriate, allowed for the possibility of conversion to summary judgment." *United States v. $6,976,934.65* ("*Soulbury I*"), 478 F. Supp. 2d 30, 38 (D.D.C. 2007) (listing cases). Niam asserts that our Circuit has "held that settled summary judgment standards apply to motions to strike or dismiss claims on fugitive disentitlement grounds." Niam's Opp'n 18. To say the least, this claim is quite misleading. Courts in our Circuit have applied summary judgment standards *after* converting motions under § 2466 to motions for summary judgment "where appropriate," *see Soulbury I*, 478 F. Supp. 2d at 38, 43–44, *or* when a party has affirmatively brought a motion for summary judgment, *see Soulbury II*, 554 F.3d at 126. Thus, there is *no* requirement here that all motions under § 2466 be decided under the summary judgment standard.

Indeed, a court should not always apply a summary judgment standard to a § 2466 motion when a party has not moved for summary judgment. As the U.S. Court of

Appeals for Second Circuit noted when facing the same arguments that Niam makes here, "[T]he fugitive disentitlement statute . . . is not mean to address a claim or defense on its merits; it provides an ancillary basis for disallowing a claim, and it contains provisions that are incompatible with fundamental principles governing summary judgment." *United States v. Technodyne LLC*, 753 F.3d 368, 381 (2d Cir. 2014). Unlike summary judgment—where a court does not make findings of fact and "*shall* grant summary judgment" as a matter of law where there is no genuine dispute of material fact, Fed. R. Civ. P. 56(a) (emphasis added)—a court has discretion whether to apply the fugitive disentitlement statute "upon a finding" the court must make, 28 U.S.C. § 2466(a). *See Technodyne*, 753 F.3d at 381–82.

When considering a motion to dismiss under the fugitive disentitlement statute, courts in our Circuit consider a five-part test that tracks § 2466's statutory requirements:

> (1) a warrant or similar process has issued in a criminal case for the claimant's apprehension; (2) the claimant had notice or knowledge of the warrant or process; (3) the criminal case is related to the forfeiture action; (4) the claimant is not confined or otherwise held in custody in another jurisdiction; and (5) the claimant has deliberately avoided criminal prosecution by leaving the United States, declining to enter or reenter the country, or otherwise evading the criminal court's jurisdiction.

*Soulbury II*, 554 F.3d at 128 (citing and adopting this test from *Collazos*, 368 F.3d 190). The fifth factor, whether a claimant is a fugitive, is particularly important in this case. *See id.* "Courts consider whether a claimant is a fugitive under Section 2466 under 'a totality of the circumstances' and 'may consider matters outside the pleadings.'" *United States v. Any & All Funds on Deposit in Acct. No. XXXXX-XXXXXXXX at HSBC Bank PLC, 55 Corp. St., Coventry, United Kingdom, Held in the Name of Jittisopa Siriwan*, 87

F. Supp. 3d 163, 168 (D.D.C. 2015) (quoting *Soulbury I*, 87 F. Supp. 3d at 168).

## III. ANALYSIS

Because Niam's claim clearly meets the five-factor test for applying the fugitive disentitlement doctrine under § 2466, I will grant the Government's motion to dismiss. Niam does not contest that the first four factors are met. Pl.'s Reply 3. *See generally* Niam Opp'n.; Niam Sur-Reply. Indeed, the record is clear that: (1) a warrant has issued for Niam's apprehension in a criminal case; (2) Niam had notice or knowledge of the warrant; (3) that criminal case is related to this forfeiture action; and (4) Niam is not confined or otherwise held in custody in another jurisdiction. *See* 28 U.S.C. § 2466. Niam only argues that she is not a fugitive under the fifth factor, refuting that she has been "deliberately avoiding criminal prosecution by declining to enter the United States." Niam Opp'n 18–21. But Niam is a fugitive under § 2466 because she has indeed "deliberately avoided criminal prosecution" and "decline[d] to enter or reenter the country." 28 U.S.C. § 2466.

A finding that a claimant is a fugitive requires a finding that the claimant possessed the specific "intent to avoid criminal prosecution," which is to say that the fugitive's "evasion must have been '*in order to* avoid criminal prosecution.'" *See Soulbury II*, 554 F.3d at 132–33 (quoting *id.* § 2466(a)(1)). The record here shows exactly that. Niam has consistently taken the position that she will not enter the United States unless she can be *guaranteed* pretrial release. *See* Niam Opp'n 6–7, 21–22; Rudenko Aff. ¶ 11. Such conditioning is a "hallmark indicator" that a claimant-defendant is declining to return to the country in order to avoid prosecution. *Technodyne*,

753 F.3d at 386. But Niam goes even further and has remained a fugitive even after the Government sought a stay of the briefing of this motion to facilitate Niam's surrender *and* accommodate her request regarding pretrial release. Pl.'s Reply 4–6. The fact that Niam has not provided the Government with *any* of the information it requested to facilitate those processes (or surrender otherwise) weighs strongly in favor of finding that Niam is indeed a fugitive under § 2466. Niam's argument that the Government made the process unnecessarily difficult is unpersuasive as she does not provide reason why that is the case and cannot seem to explain why she could not provide the Government with *any* of the information it requested. *See generally* Niam Sur-Reply.

As such, I find that Niam is a fugitive and that it is appropriate that her claim be dismissed under the fugitive disentitlement doctrine so as to prevent "the 'unseemly spectacle' of allowing an accused to absent [her]self deliberately in order to avoid prosecution in the United States while using United States courts to retrieve the proceeds of [her] crime." *Technodyne*, 753 F.3d at 385–86 (quoting *Collazos*, 368 F.3d at 200). As the old expression goes, she cannot have her cake and eat it too!

*[signature]*
RICHARD J. LEON
United States District Judge